**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(SPRINGFIELD DIVISION)**

| | |
|---|---|
| ALIVIA MATTOCKS | * |
| 200 Jerome Avenue | * |
| Bristol, Connecticut 06010 | * |
| | * |
| PLAINTIFF, | * |
| | * |
| v. | * |
| | * |
| BINO, INC. | * |
| 391 Dwight Street | * |
| Springfield, Massachusetts 01103 | * |
| | * |
| And | * |
| | * |
| BSC REALTY, INC. | * |
| 582 Pinewood Drive | * |
| Longmeadow, Massachusetts 01106 | * |
| | * |
| And | * |
| | * |
| HELLEN SANTANIELLO | * |
| 582 Pinewood Drive | * |
| Longmeadow, Massachusetts 01106 | * |
| | * |
| And | * |
| | * |
| JAMES SANTANIELLO | * |
| 582 Pinewood Drive | * |
| Longmeadow, Massachusetts 01106 | * |
| | * |
| DEFENDANTS. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Plaintiff Alivia Mattocks ("Plaintiff"), through undersigned counsel, submits her

Complaint against Defendants Bino, Inc. ("Bino"), BSC Realty, Inc. ("BSC"), and Hellen and

Santaniello and James Santaniello ("the Santaniellos") (collectively, "Defendants"). In this action,

Plaintiff seeks to recover unpaid wages and other damages against Defendants, jointly and

severally, for violations of the Federal Fair Labor Standards Act, 29 USC 201, *et seq*. ("FLSA");

M.G.L. c. 149 Sections 148 & 150 for Failure to Pay for Work Performed ("Wage Payment Act");

M.G.L. c 151 Sections 1 & 7 for Failure to Pay Minimum Wage Compensation ("Minimum Wage

Act"); and M.G.L. c. 149 Section 152A for Unlawful Tip Sharing ("Tip Act").

## **THE PARTIES**

1.      Plaintiff is an adult resident and domiciliary of Connecticut.

2.      During the period relevant to this action, Plaintiff was employed by Defendants as

an exotic dancer at Defendants' Center Stage Gentlemen's Club, located at 265-271 Dwight

Street, Springfield Massachusetts 01103.

3.      Bino is a corporation, formed under the laws of the Commonwealth of

Massachusetts.

4.      During the period relevant to this action, Bino operated as the Center Stage

Gentlemen's Club, located at 265-271 Dwight Street, Springfield Massachusetts 01103.

5.      BSC is a corporation, formed under the laws of the Commonwealth of

Massachusetts.

6.      During the period relevant to this action, BSC owned the real property located at

265-271 Dwight Street, Springfield Massachusetts 01103, where the Center Stage Gentlemen's

Club operated.

7.      The Santaniellos are adult residents and domiciliaries of Massachusetts.

8.      During the relevant period, the Santaniellos owned and operated Bino and BSC,

as a closely held family business, making decisions related to or affecting the administration and

operation of the Bino, BSC, and other related business entities as a single enterprise business

operation under one singular ownership and management structure.

9.      During the period relevant to this action, the Santaniellos were the primary owners and/or each held a substantial ownership and/or financial interest in Bino and BSC.

10.     During the period relevant to this action, the Santaniellos were the primary owners and/or each held a substantial ownership and/or financial interest in the Center Stage Gentlemen's Club business operation.

11.     Hellen Santaniello is identified with the Secretary of the Commonwealth of Massachusetts as the President, Treasurer, Secretary, and Director of Bino.

12.     James Santaniello is identified with the Secretary of the Commonwealth of Massachusetts as the President, Treasurer, Secretary, and Director of BSC.

13.     During the period relevant to this action, the Center Stage Gentlemen's Club operated at a physical real property location owned by BSC, a business entity owned and operated by the Santaniellos.

14.     On information and belief, the rental or lease agreement between Bino and BSC for the operation of the Center Stage Gentlemen's Club was and continues to be structured in a manner most financially advantageous to the Santaniellos and not in a manner reflecting market rates and/or terms and conditions of an arms-length negotiation or agreement between unrelated parties and/or parties with non-connected parties with divergent financial interests.

15.     During the period relevant to this action, Bino and the Santaniellos benefitted financially both from the operation of the Center Stage Gentlemen's Club and from rental and/or lease payments made by the Center Stage Gentlemen's Club to BSC.

16.     During the period relevant to this action, Bino and the Santaniellos benefitted financially both from Plaintiff's direct employment duties as an exotic dancer at or in the Center

Stage Gentlemen's Club and from direct payments made by Plaintiff to BSC as a mandatory condition of her work duties as an exotic dancer at or in the Center Stage Gentlemen's Club.

17.    During the period relevant to this action, the Santaniellos participated substantially in the administration, operations, and management of the Center Stage Gentlemen's Club.

18.    During the period relevant to this action, the Santaniellos participated substantially in the administration, operations, and management of Bino.

19.    During the period relevant to this action, the Santaniellos participated substantially in the administration, operations, and management of BSC.

20.    At all times relevant to this action, the Santaniellos' duties and responsibilities as related to owning and/or operating BSC was indistinguishable from the Santaniellos' duties and responsibilities as related to owning and/or operating Bino.

21.    At all times relevant to this action, Defendants collectively owned and controlled Bino and BSC for the combined and common business purpose of operating the Center Stage Gentlemen's Club.

22.    On information and belief, at all times relevant to this action, Defendants comingled monies by and between Bino and BSC for the combined common business purpose of operating the Center Stage Gentlemen's Club.

23.    On information and belief, at all times relevant to this action, Defendants used and continue to use a common bookkeeper and payroll system for their operation of Bino and BSC.

24.    During the period relevant to this action, all Defendants operated collectively as a single integrated employer under the FLSA and Massachusetts law, controlling and directing the

employment of Plaintiff while employed by Defendants to work or perform in or at Defendants' Center Stage Gentlemen's Club.

25.     During the period relevant to his action, all Defendants qualified as Plaintiff's employers or joint employers under the FLSA and Massachusetts law while Plaintiff was employed by Defendants to perform as an exotic dancer at Defendants' Center Stage Gentlemen's Club.

26.     During the period relevant to this action, the Santaniellos each participated substantially setting and enforcing all rules, policies, and practices related to or affecting the work and work environment for Plaintiff while she was working or performing at Defendants' Center Stage Gentlemen's Club.

27.     During the period relevant to this action, the Santaniellos each had the power and authority to alter and amend all rules, policies, and practices related to or affecting the work and work environment for Plaintiff while she was working or performing at Defendants' Center Stage Gentlemen's Club.

28.     During the period relevant to this action, each of the Santaniellos had the power and full authority to hire, discipline, and fire Plaintiff while she was working or performing at or in Defendants' Center Stage Gentlemen's Club

29.     During the period relevant to this action, each of the Santaniellos had the power to and full authority to manage and/or supervise Plaintiff's work schedules and/or work conditions while she worked or performed in or at Defendants' Center Stage Gentlemen's Club.

30.     During the period relevant to this action, each of the Santaniellos was responsible for maintaining employment records and related documents relating to performances and/or work duties performed by Plaintiff in or at Defendants' Center Stage Gentlemen's Club.

31.     During the period relevant to this action, Defendants had gross revenue and sales exceeding $500,000.00, sold beer, wine, spirituous beverages, colas, and food that passed in interstate commerce and otherwise qualified as an "enterprise engaged in commerce" under the FLSA.

32.     In this action, Plaintiff alleges Counts and claims for relief against Defendants arising under laws of the United States and common and factually interrelated claims for relief against Defendants arising under the laws of the Commonwealth of Massachusetts.

33.     This Court properly confers "Federal Question" Jurisdiction over Plaintiff's Federal claims against Defendants in this matter pursuant to 28 U.S.C. § 1331, and properly confers supplemental jurisdiction over Plaintiff's interrelated Massachusetts claims against Defendants in this matter pursuant to 28 U.S.C. § 1367.

34.     Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(1) because each Defendant is a resident and/or domiciliary of the Commonwealth Massachusetts and the acts and omissions giving rise to this action occurred primarily at Defendants' Center Stage Gentlemen's Club located in Springfield, Massachusetts.

## FACTS

35.      During the period of approximately April 2020 through the date of her termination on or about July 19, 2022, Plaintiff was employed by Defendants as an exotic dancer at Defendants' Center Stage Gentlemen's Club in Springfield, Massachusetts.

36.     While employed, the number of shifts and hours Plaintiff worked as a dancer at Defendants' Center Stage Gentlemen's Club varied from week to week.

37.     While employed, Defendants had actual knowledge of all hours Plaintiff worked each shift and each week as a dancer at Defendants' Center Stage Gentlemen's Club.

38.     For a substantial number of weeks during Plaintiff's period of employment, Defendants failed to pay Plaintiff any wages or other compensation for hours worked as a dancer at Defendants' Center Stage Gentlemen's Club.

39.     For a substantial number of weeks during Plaintiff's period of employment, the only compensation that Plaintiff received while working as a dancer at Defendants' Center Stage Gentlemen's Club was in the form of tips from Defendants' customers.

40.     In some limited number of weeks during Plaintiff's period of employment, Defendants paid Plaintiff for some (but not all) hours Plaintiff worked at the Massachusetts' service minimum wage of approximately $4.35 or $5.55 per hour for hours worked as a dancer at Defendants' Center Stage Gentlemen's Club.

41.     During some limited number of weeks during Plaintiff's employment as a dancer at Defendants' Center Stage Gentlemen's Club, Defendants attempted to utilize the Federal and Massachusetts "tip credit" method of compensation to pay Plaintiff at the Massachusetts service minimum wage of approximately $4.35 or $5.55 per hour for tipped employees.

42.     At no time during the period of Plaintiff's employment as a dancer at Defendants' Center Stage Gentlemen's Club did Defendants pay Plaintiff at an hourly rate at least equal to the full Federal or Massachusetts minimum wage.

43.     Each shift Plaintiff worked as a dancer at Defendants' Center Stage Gentlemen's Club, Defendants charged, deducted, or assigned a per shift locker rental and/or lease payment (otherwise known as a "house fee") payment ranging from $25.00 to $40.00 or more per shift.

44.     During the period of Plaintiff's employment, Plaintiff's payment to Defendants of this rental and/or lease (or "house fee") was a mandatory term and/or condition of Plaintiff's employment for each shift Plaintiff worked at Defendants' Center Stage Gentlemen's Club and was paid by Plaintiff for the use and benefit of all Defendants.

45.     During Plaintiff's period of employment, Defendants had knowledge from previous litigation that charging or deducting a traditional "house fee" to Plaintiff was an unlawful payroll practice; consequently, Defendants re-titled and/or re-packaged the "house fee" as a locker rental and/or facility lease payment to BSC and represented to Plaintiff the rental and/or lease fee (or "house fee") was payable for the rental of facilities at Defendants' Center Stage Gentlemen's Club where Plaintiff could change clothing, store her personal items, and use the bathroom.

46.     The mandatory rental and/or lease (or "house fee") paid by Plaintiff to Defendants each shift Plaintiff worked as a dancer at Defendants' Center Stage Gentlemen's Club was represented as a payment to the landlord, BSC, but was received and kept by Defendants and/or Defendants' managerial employees.

47.     During the period of Plaintiff's employment, at the conclusion of each shift Plaintiff worked as a dancer at Defendants' Center Stage Gentlemen's Club, Defendants required Plaintiff to pay and/or assign a portion of the tips Plaintiff received from Defendants' customers to Defendants' non-dancer employees, including a mandatory $10.00 (or similar) tip assignment paid to Defendants' "House Mom" (when applicable) a mandatory $10.00 (or similar) tip assignment to Defendants' non-dancer wait staff, and a mandatory $15.00 (or similar) tip assignment to Defendants' DJ.

48.     During the period of Plaintiff's employment, one of the methods by which Plaintiff earned tips while working as a dancer at Defendants' Center Stage Gentlemen's Club was by performing private and/or semi-private dances for Defendants' customers.

49.     At no time during the period of Plaintiff's employment were the tips Plaintiff earned at Defendants' Center Stage Gentlemen's Club for performing private and/or semi-private dances for Defendants' customers recorded in Defendants' gross receipts or otherwise distinguished by Defendants in payroll or in related tax information returns issued by Defendants to Plaintiff as income distinguishable from tip income.

50.     In instances that Plaintiff performed a private and/or semi-private dance for Defendants' customers at Defendants' Center Stage Gentlemen's Club, Defendants customers directly paid Plaintiff a tip for the dance (e.g. $30.00 for a private dance).

51.     In each instance that Defendants' customers paid Plaintiff a tip for a private and/or semi-private dance at Defendants' Center Stage Gentlemen's Club, Defendants required Plaintiff to pay or assign a portion of the private dance tip she received from Defendants' customer directly to Defendants and/or Defendants' managers (e.g. $5.00 payment/assignment from a $30.00 private dance tip from customer paid or assigned by Plaintiff to Defendants).

52.     The mandatory tip deduction or assignment Plaintiff paid to Defendants from each private and/or semi-private dance at Defendants' Center Stage Gentlemen's Club was received and kept by Defendants and/or Defendants' managerial employees.

53.     At all times during the period of Plaintiff's employment at Defendants' Center Stage Gentlemen's Club, Defendants refused to allow Plaintiff to keep or retain all the tips she received from Defendants' customers.

54.     On May 25, 2022, Plaintiff, through undersigned counsel, served a pre-litigation letter on Defendants' counsel.  In this letter, Plaintiff alerted Defendants that Plaintiff had retained counsel for the purpose of prosecuting claims against Defendants arising from Defendants' failure to pay Plaintiff wages and/or Defendants' unlawful deduction or assignment of Plaintiff's tips and wages in violation of the wage payment requirements and protections of the FLSA and Massachusetts law.

55.     Notwithstanding that Defendants had actual knowledge of Plaintiff's claim for unpaid wages and damages under the FLSA and Massachusetts law, and that Plaintiff was represented by counsel related to that matter, on or about June 23, 2022, Defendants directed their managers at the Center Stage Gentlemen's Club to approach Plaintiff during her work shift and force (through intimidation and/or material misrepresentation) Plaintiff to sign a waiver and/or release agreement purporting to waive and/or release any claim for unpaid wages and/or damages Plaintiff  held against Defendants in exchange for monetary consideration in the amount of $20.00.

56.     Plaintiff refused to sign or execute the document used by Defendants to attempt to trick Plaintiff into waiving or releasing her FLSA and Massachusetts law wage claims and communicated expressly to Defendants' managers that she would not sign the document.

57.     Shortly thereafter, in July 2022, Defendants terminated Plaintiff's employment.

58.     Defendants' termination of Plaintiff's employment was directly and proximately motivated and caused by a knowing and intentional motive of retaliation by Defendants and against Plaintiff arising from Plaintiff submitting a complaint and formal request to Defendants for payment of unpaid wages and damages by Defendants to Plaintiff arising from Defendants'

violations of the minimum wage compensation and wage payment requirements of the FLSA and Massachusetts law.

59.     Defendants would not have terminated Plaintiff's employment but for Defendants' retaliatory motive against Plaintiff arising from Plaintiff submitting a complaint and formal request to Defendants for payment of unpaid wages and damages by Defendants to Plaintiff arising from Defendants' violations of the minimum wage compensation and wage payment requirements of the FLSA and Massachusetts law.

60.     Defendants' act of retaliation/termination of Plaintiff's employment directly and proximately caused Plaintiff to suffer substantial anger, stress, anxiety, and related emotional damages.

61.     Defendants' act of retaliation/termination of Plaintiff's employment directly and proximately caused Plaintiff to suffer financial loss including lost past and future wages and related tip income.

62.     Pursuant to M.G.L. c. 149 § 150, on August 2, 2022, Plaintiff filed her required statutory claims with the office of the Attorney General, and the Attorney General issued Plaintiff a right to sue letter.

## CAUSES OF ACTION

### Count I
### M.G.L. c. 151 §§ 1 & 7
### (Failure to Pay Minimum Wage)

63.     Plaintiff hereby incorporates all the preceding paragraphs by reference as if fully set forth herein.

64.     The Massachusetts Minimum Wage Act required Defendants to pay Plaintiff for all hours worked at an hourly rate at least equal to the applicable Massachusetts Minimum Wage (2020 - $12.75 per hour; 2021 - $13.50 per hour; and 2022 - $14.25 per hour).

65.     A limited exception to full payment of the Massachusetts Minimum Wage, referred to as the "tip credit," permitted Defendants to pay Plaintiff direct wages at "the Service Rate," statutorily set below the Massachusetts Minimum Wage (2020 - $4.95 per hour; 2021 - $5.55 per hour; and 2022 - $5.55 per hour) provided (i) Defendants provided Plaintiff with the required statutory notice; (ii) Plaintiff actually received tips in an amount which, when added to the Service Rate, equals or exceeds the full Massachusetts Minimum Wage; and (iii) **all tips** received by Plaintiff are retained by Plaintiff, the individual receiving the tips.  454 Mass. Code Regs. 27.03(2)(b) (emphasis added).

66.     In conjunction with the Minimum Wage Act, the Massachusetts Tips Act provides:

> (b)     No employer or other person shall demand, request, **or accept** from any wait staff employee, service employee, or service bartender any payment or deduction from a tip or service charge given to such wait staff employee, service employee, or service bartender by a patron. No such employer or other person shall retain or distribute in a manner inconsistent with this section any tip or service charge given directly to the employer or person.; and

> (d)     If an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted **only to** the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees.

Mass. Ann. Laws ch. 149, § 152A (emphasis supplied).

67.     As alleged above, during the period of Plaintiff's employment, Defendants paid Plaintiff no wages for a substantial number of hours Plaintiff performed compensable employment duties for the primary benefit of Defendants and their customers.

68.     As alleged above, during the period of Plaintiff's employment, Defendants paid Plaintiff at the "Service Rate" for some, but not all hours of compensable employment duties Plaintiff performed for the primary benefit of Defendants and their customers.

69.     As alleged above, during the period of Plaintiff's employment, Defendants knowingly permitted Plaintiff to pay and/or assign a portion of the tips she received from Defendants' customers to Defendants and/or Defendants' managers.

70.     During the entire period of Plaintiff's employment, Defendants failed to pay Plaintiff wages for all compensable hours worked at an hourly rate at least equal to the Massachusetts Minimum Wage.

71.     During the entire period of Plaintiff's employment, Defendants failed to comply with the Minimum Wage Act "tip credit" requirements and, in so doing, violated the wage payment requirements of the Minimum Wage Act.

72.     During the entire period of Plaintiff's employment, Defendants had actual knowledge of the Massachusetts Minimum Wage Act wage payment requirements.

73.     During the entire period of Plaintiff's employment, Defendants knowingly and/or intentionally violated the wage payment requirements of the Massachusetts Minimum Wage Act.

74.     Defendants' violations of the Massachusetts Minimum Wage Act were not the product of good faith, innocent mistake, or any other mitigating circumstance.

## Count II
### M.G.L. c. 149 § 152A
### (Unlawful Tip Sharing)

75.     Plaintiff hereby incorporates all the preceding paragraphs by reference as if fully set forth herein.

76.     As alleged above, at all times during Plaintiff's employment, Defendants required or, at least, knowingly permitted unlawful tip sharing by Plaintiff with Defendants and/or Defendants' managerial and/or non-service employees.

77.     As alleged above, at all times during Plaintiff's employment, Defendants violated the Massachusetts Tip Act by requiring and/or knowingly permitting Plaintiff to pay or assign a portion of the tips she received from Defendants' customers to Defendants' managers as a rental and/or lease payment (or "house fee").

78.     As alleged above, at all times during Plaintiff's employment, Defendants violated the Massachusetts Tip Act by requiring and/or knowingly permitting Plaintiff to pay or assign a portion of the tips she received from Defendants' customers to Defendants' "house mom (a managerial employee)," wait staff, security guards, and DJs.

79.     As alleged above, at all times during Plaintiff's employment, Defendants violated the Massachusetts Tip Act by requiring and/or knowingly permitting Plaintiff to pay or assign a portion or "split" of the tips Plaintiff received from Defendants' customers for performing private and/or semi-private dances was paid directly by Plaintiff to Defendants and/or Defendants' managers and was kept by Defendants and/or Defendants' managers.

80.     During the entire period of Plaintiff's employment, Defendants perpetrated an ongoing policy or scheme of tip deductions and/or tip assignments resulting in Plaintiff paying and/or assigning portions of the tips she received from Defendants' customers in direct violation of the requirements of the Massachusetts Tip Act.

81.     During the entire period of Plaintiff's employment, Defendants had actual knowledge of the Massachusetts Tip Act's tip sharing and/or assignment requirements and prohibitions.

82.     During the entire period of Plaintiff's employment, Defendants knowingly and/or intentionally violated the tip sharing and/or assignment requirements and prohibitions of the Massachusetts Tip Act.

83.     Defendants' violations of the Massachusetts Tip Act were not the product of good faith, innocent mistake, or any other mitigating circumstance.

## Count III
### M.G.L. c. 149 §§ 148 & 150
### (Failure to Pay for Work Performed)

84.     Plaintiff hereby incorporates all the preceding paragraphs by reference as if fully set forth herein.

85.     The Massachusetts Wage Payment Act required Defendants to pay Plaintiff all wages earned and owed within seven (7) days of the termination of the pay period during which the wages were earned.

86.     As alleged above, in each pay period of Plaintiff's employment, Defendants failed to pay Plaintiff the full Massachusetts Minimum Wage earned and owing for all hours worked.

87.     As alleged above, during Plaintiff's entire employment, Defendants failed to pay Plaintiff all wages earned and owed each pay period, or within seven (7) days of the termination of each pay period.

88.     During the entire period of Plaintiff's employment, Defendants had actual knowledge of the Massachusetts Wage Payment Act's wage payment requirements.

89.     During the entire period of Plaintiff's employment, Defendants knowingly and/or intentionally failed to pay Plaintiff full and timely wages for all compensable hours worked each pay period in direct violation of the Massachusetts Wage Payment Act.

90.     Defendants' violations of the Massachusetts Wage Payment Act were not the product of good faith, innocent mistake, or any other mitigating circumstance.

**Count IV**
**Violation of the FLSA**
**Failure to Pay Statutory Minimum Wage)**

91.     Plaintiff hereby incorporates all the preceding paragraphs by reference as if fully set forth herein.

92.     The FLSA required Defendants to pay Plaintiff for all hours worked at an hourly rate at least equal to the applicable Federal Minimum Wage ($7.25 per hour)

93.     A limited exception to full payment of the Federal Minimum Wage, referred to as the "tip credit," permitted Defendants to pay Plaintiff direct wages at "the Service Rate," statutorily set below the Federal Minimum Wage ($2.13 per hour) provided (i) Defendants provided Plaintiff with the required statutory notice; (ii) Plaintiff actually received tips in an amount which, when added to the Service Rate, equals or exceeds the full Federal Minimum Wage; and (iii) **all tips** received by Plaintiff are retained Plaintiff, the individual receiving the tips. *See* 29 U.S.C. 203(m)(2)(A); 29 CFR 531.59.

94.     As alleged above, during the period of Plaintiff's employment, Defendants paid Plaintiff no wages for a substantial number of hours Plaintiff performed compensable employment duties for the primary benefit of Defendants and their customers.

95.     As alleged above, during the period of Plaintiff's employment, Defendants paid Plaintiff at the "Service Rate" for some, but not all hours of compensable employment duties Plaintiff performed for the primary benefit of Defendants and their customers.

96.     During the period of Plaintiff's employment, Defendants required Plaintiff to pay and/or assign a portion of the tips she received from Defendants' customers to Defendants and/or Defendants' managers.

97.     During the entire period of Plaintiff's employment, Defendants failed to pay Plaintiff wages for all compensable hours worked at an hourly rate at least equal to the Federal Minimum Wage.

98.     During the entire period of Plaintiff's employment, Defendants failed to comply with the FLSA Minimum Wage "tip credit" requirements and, in so doing, violated the wage payment requirements of the FLSA.

99.     During the entire period of Plaintiff's employment, Defendants had actual knowledge of the FLSA Minimum Wage payment requirements.

100.    During the entire period of Plaintiff's employment, Defendants knowingly and/or intentionally violated the Minimum Wage payment requirements of the FLSA.

101.    Defendants' violations of the FLSA Minimum Wage payment requirements were not the product of good faith, innocent mistake, or any other mitigating circumstance.

### Count V
### Unlawful Retaliation/Termination - Massachusetts Law

102.    Plaintiff hereby incorporates all the preceding paragraphs by reference as if fully set forth herein.

103.    The Massachusetts Wage Act, Massachusetts General Laws c. 149, § 148A, provides, "No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter." … "Any employer who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general ***or any other***

*person*, or assists the attorney general in any investigation under this chapter, or has instituted, or

caused to be instituted any proceedings under or related to this chapter, or has testified or is

about to testify in any such proceedings, shall have violated this section and shall be punished or

shall be subject to civil citation or order as provided in [ § ] 27C" (emphasis added).

104.     On May 25, 2022, Plaintiff, through undersigned counsel, served a pre-litigation

letter on Defendants' counsel.  In this letter, Plaintiff alerted Defendants that Plaintiff had

retained counsel for the purpose of prosecuting Defendants arising from Defendants' failure to

pay Plaintiff wages and/or Defendants' unlawful deduction or assignment of Plaintiff's tips and

wages in violation of the wage payment requirements and protections of Massachusetts law.

105.     Notwithstanding that Defendants had actual knowledge of Plaintiff's claim for

unpaid wages and damages under Massachusetts law, and that Plaintiff was represented by

counsel related to that matter, on or about June 23, 2022, Defendants directed their managers at

the Center Stage Gentlemen's Club to approach Plaintiff during her work shift and force

(through intimidation and/or material misrepresentation) Plaintiff to sign a waiver and/or release

agreement purporting to waive and/or release any claim for unpaid wages and/or damages

Plaintiff  held against Defendants in exchange for monetary consideration in the amount of

$20.00.

106.     Plaintiff refused to sign or execute the document used by Defendants to attempt to

trick Plaintiff into waiving or releasing her Massachusetts law and related wage claims and

communicated expressly to Defendants' managers that she would not sign the document.

107.     Shortly thereafter, in July 2022, Defendants terminated Plaintiff's employment.

108.     Defendants' termination of Plaintiff's employment was directly and proximately

motivated and caused by a knowing and intentional motive of retaliation by Defendants and

against Plaintiff arising from Plaintiff submitting a complaint and formal request to Defendants for payment of unpaid wages and damages by Defendants to Plaintiff arising from Defendants' violations of the minimum wage compensation and wage payment requirements of Massachusetts law.

109.    Defendants would not have terminated Plaintiff but for Defendants' retaliatory motive against Plaintiff arising from Plaintiff submitting a complaint and formal request to Defendants for payment of unpaid wages and damages by Defendants to Plaintiff arising from Defendants' violations of the minimum wage compensation and wage payment requirements of Massachusetts law.

110.    Defendants' termination of Plaintiff's employment is in direct violation of the anti-retaliation protections set forth under the Massachusetts Wage Act, as described and alleged above.

111.    Defendants' act of retaliation/termination of Plaintiff employment directly and proximately caused Plaintiff to suffer substantial anger, stress, anxiety, and related emotional damages.

112.    Defendants' act of retaliation/termination of Plaintiff's employment directly and proximately caused Plaintiff to suffer financial loss including lost past and future wages and related tip income.

## Count VI
## Unlawful Retaliation/Termination - FLSA

113.    Plaintiff hereby incorporates all the preceding paragraphs by reference as if fully set forth herein.

114.    The FLSA provides that it is unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or

19

instituted or cased to be instituted any proceeding under [the FLSA]… " 29 U.S.C. § 215(a)(3).

115.    On May 25, 2022, Plaintiff, through undersigned counsel, served a pre-litigation letter on Defendants' counsel.  In this letter, Plaintiff alerted Defendants that Plaintiff had retained counsel for the purpose of prosecuting Defendants arising from Defendants failure to pay Plaintiff wages and/or Defendants' unlawful deduction or assignment of Plaintiff's tips and wages in violation of the wage payment requirements and protections of the FLSA.

116.    Notwithstanding that Defendants had actual knowledge of Plaintiff's claim for unpaid wages and damages under the FLSA, and that Plaintiff was represented by counsel related to that matter, on or about June 23, 2022, Defendants directed their managers at the Center Stage Gentlemen's Club to approach Plaintiff during her work shift and force (through intimidation and/or material misrepresentation) Plaintiff to sign a waiver and/or release agreement purporting to waive and/or release any claim for unpaid wages and/or damages Plaintiff  held against Defendants in exchange for monetary consideration in the amount of $20.00.

117.    Plaintiff refused to sign or execute the document used by Defendants to attempt to trick Plaintiff into waiving or releasing her FLSA and related wage claims and communicated expressly to Defendants' managers that she would not sign the document.

118.    Shortly thereafter, in July 2022, Defendants terminated Plaintiff's employment.

119.    Defendants' termination of Plaintiff's employment was directly and proximately motivated and caused by a knowing and intentional motive of retaliation by Defendants and against Plaintiff arising from Plaintiff submitting a complaint and formal request to Defendants for payment of unpaid wages and damages by Defendants to Plaintiff arising from Defendants' violations of the minimum wage compensation and wage payment requirements of the FLSA.

120.     Defendants would not have terminated Plaintiff's employment but for Defendants' retaliatory motive against Plaintiff arising from Plaintiff submitting a complaint and formal request to Defendants for payment of unpaid wages and damages by Defendants to Plaintiff arising from Defendants' violations of the minimum wage compensation and wage payment requirements of the FLSA.

121.     Defendants' termination of Plaintiff's employment is in direct violation of the anti-retaliation protections set forth under the FLSA, as described and alleged above.

122.     Defendants' act of retaliation/termination of Plaintiff employment directly and proximately caused Plaintiff to suffer substantial anger, stress, anxiety, and related emotional damages.

123.     Defendants' act of retaliation/termination of Plaintiff's employment directly and proximately caused Plaintiff to suffer financial loss including lost past and future wages and related tip income.

## JURY DEMAND

Plaintiff requests a trial by jury on all facts and issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully this Court or a jury enter the following relief:

1.     An award of damages for all wages that are due to Plaintiff;

2.     An award of damages for all fees and/or tip deductions or assignments required or permitted by Defendants to be paid by Plaintiff to Defendants, including rental and/or lease payments (or "house fees") and tip deductions and/or assignments paid by Plaintiff to Defendants' "house mom," wait staff, security, and DJs;

3.     Statutory liquidated damages on all wage-related damages;

4.      Economic, compensatory, emotional, and punitive damages arising from Defendants' unlawful retaliation/termination of Plaintiff's employment in the amount of One Hundred Thousand Dollars ($100,000.00) or such greater amount as determined by a jury;

5.      Judgment in favor of Plaintiff for all attorney's fees and litigation costs;

6.      Judgment in favor of Plaintiff and against Defendants, jointly and severally, for unpaid wages and all other damages herein alleged; and

7.      Such further relief as this Court or a jury may adjudge necessary and appropriate.

Respectfully submitted.

*/s/ Gregg C. Greenberg*
Gregg C. Greenberg, Esq.  (to be admitted *pro hac vice*)
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone: (301) 587-9373
ggreenberg@zagfirm.com

*/s/ Michael D. Pushee*
Michael D. Pushee (BBO #657343)
Law Office of Michael D. Pushee
100 Midway Road, Suite 16
Cranston, RI 02920
(401) 214-9820
mpushee@pusheelaw.com

*Counsel for Plaintiff*

## CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 4th day of October, 2022 and is available for viewing and downloading from the ECF system.

*/s/ Michael D. Pushee*